1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| PERKINELMER HEALTH SCIENCES, INC., | Case No. 5:20-cv-02083-JWH-KK |
| Plaintiff, | |
| v. | **ORDER REGARDING DEFENDANT'S MOTIONS *IN LIMINE* [ECF Nos. 92 & 93] AND PLAINTIFF'S MOTIONS *IN LIMINE* [ECF Nos. 95, 96, 97, 98, & 99]** |
| SCR LIVING LLC, a California Limited Liability Company dba CERTUS ANALYTICS; and DOES 1-10, | |
| Defendants. | |
| SCR LIVING LLC, a California Limited Liability Company dba CERTUS ANALYTICS, | |
| Counterclaimant, | |
| v. | |
| PERKINELMER HEALTH SCIENCES, INC.; and DOES 50-100, | |
| Counterdefendants | |

Before the Court are five motions *in limine* filed by Plaintiff and Counterdefendant PerkinElmer Health Sciences, Inc.[1] and two motions *in limine* by Defendant and Counterclaimant SCR Living LLC, dba Certus Analytics.[2] The Court conducted a hearing on the parties' motions *in limine* on June 3, 2022.  The parties are familiar with the factual and procedural background of this case.  Accordingly, the Court relates only those facts germane to the instant Motions.

## I.  LEGAL STANDARD

### A.    Motions *in Limine*

Motions *in limine* are a well-recognized judicial practice authorized under case law.  *See Ohler v. United States*, 529 U.S. 753, 758 (2000).  The Court's power to rule on motions *in limine* stems from "the court's inherent power to manage the course of trials."  *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

Regardless of its initial decision on a motion *in limine*, a court may revisit the issue at trial.  *See* Fed. R. Evid. 103, advisory committee's note to 2000 Amendment ("Even where the court's ruling is definitive, nothing in the amendment prohibits the court from revisiting its decision when the evidence is to be offered."); *Luce*, 469 U.S. at 41–42 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").  "The Supreme Court has recognized that a ruling on a motion *in limine* is essentially a preliminary opinion that falls entirely within the discretion of the district court."  *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) (citing *Luce*, 469 U.S. at 41–42).

---

[1]    Pl.'s Mots. *in Limine* ("Plaintiff's Motions *in Limine* 1-5") [ECF Nos. 95-99].

[2]    Def.'s Mots. *in Limine* ("Defendant's Motions *in Limine* 1-2") [ECF Nos. 92 & 93].

**B.   *Daubert* Motions**

Expert witness testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 should be applied consistent with the "liberal thrust" of the Federal Rules of Evidence and their "general approach of relaxing the traditional barriers to 'opinion testimony.'" *Daubert v. Merrell Dow Pharm.*, Inc., 509 U.S. 579, 588 (1993) (citing *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169 (1988). A trial court's "gatekeeping" obligation to admit only expert testimony that is both reliable and relevant is especially important "considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony." *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1063–64 (9th Cir. 2002). Nevertheless, "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).

The trial court is accorded wide discretion when acting as a gatekeeper for the admissibility of expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526

U.S. 137, 151–52 (1999).  First, the court must determine if a witness has the required expertise, whether it be "knowledge, skill, experience, training, or education" under Rule 702(a).  Fed. R. Evid. 402.  Next, courts must ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Daubert*, 509 U.S. at 589.  The expert's opinion must be based upon "scientific knowledge"; opinions based upon unsubstantiated generalizations or opinions not derived by the scientific method must be excluded.  *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995).

## II.  DISCUSSION

**A.    Certus's Motions *in Limine***

### 1.    Motion *in Limine* No. 1

Certus seeks to exclude testimony from PerkinElmer's expert witness Shaun R. Opie, Ph.D.[3]  Opie is prepared to testify to the following opinions:

- that a vendor-provided template Standard Operating Procedure ("SOP"), such as the one provided by PerkinElmer, is not a guarantee of test validation;
- that Certus did not allocate sufficient time to validation and licensure activities;
- that California is one of the most challenging states in which to obtain licensure for a cannabis analytical laboratory; and

---

[3]    Def. and Counter-Cl.'s Mot. *in Limine* No. 1 (to Exclude Expert Testimony and Opinions of Shaun R. Opie, Ph.D.) ("Defendant's First Motion *in Limine*") [ECF No. 92] 1:5-12.

- that Certus was never in the position to obtain a cannabis laboratory license from California's Bureau of Cannabis Control ("BCC") by virtue of Certus's inability to satisfy regulatory requirements.[4]

Certus levels the following four criticisms against Opie as reasons to exclude his opinion: (1) he lacks formal education or professional experience in analytical chemistry; (2) he lacks experience with licensing a cannabis laboratory with California's BCC; (3) he applied his expertise in an unreliable manner; and (4) his opinions involve inadmissible hearsay.[5]

The first criticism is a red herring. While Opie boasts a Ph.D. in biomedical sciences and molecular virology, it is his expertise with laboratory management—not analytical chemistry—upon which PerkinElmer seeks to draw.[6] Not only did Opie run a clinical diagnostics laboratory in California, but he also co-authored and edited a textbook on that topic, entitled *Cannabis Laboratory Fundamentals*.[7] The Court is satisfied that Opie can speak credibly on the topic. To the extent that deeper experience with analytical chemistry would be insightful or even necessary for his opinions, Certus is free to explore those nuances at trial through cross-examination.

Certus's second criticism fares no better. Although Opie may lack first-hand experience "validating an instrument for purposes of obtaining licensure from the BCC" in California,[8] he **has** researched and published articles concerning laboratory licensure requirements across jurisdictions, including California, and he has extensive experience with the type of equipment involved;

---

[4]    *See id.* at 2:3-10; *see also* Pl.'s Opp'n to Defendant's First Motion *in Limine* (the "Opposition to Defendant's First Motion *in Limine*") [ECF No. 108] 4:22-5:2.

[5]    *See* Defendant's First Motion *in Limine* 1:13-21 & 4:12-10:24.

[6]    Opposition to Defendant's First Motion *in Limine* 6:12-22.

[7]    *Id.* at 6:23-8:3.

[8]    Defendant's First Motion *in Limine* 2:28.

*i.e.*, liquid chromatograph mass spectrometers.[9]  One need not have "managed a cannabis laboratory in California" to speak credibly on some of the operational and regulatory hurdles involved.[10]  Opie is therefore qualified to speak on licensure issues for cannabis testing laboratories in California.  *See* Fed. R. Evid. 702(a).

The third criticism does not merit the exclusion of Opie's testimony.  Certus argues that Opie's testimony is not based upon any reliable methodology, instead characterizing it as his "say-so."[11]  In response, PerkinElmer explains that Opie's opinions are grounded in "his extensive knowledge and experience in his discipline."[12]  That knowledge and experience includes his published works.[13]

The Supreme Court has instructed that there is no "definitive checklist or test" that courts should use when evaluating the reasoning or methodology underlying an expert's testimony.  *Daubert*, 509 U.S. at 593.  But the fact that Opie's work was published and peer-reviewed, independent of this litigation, provides sufficient indicia of its reliability.[14]  *See id.* (noting that publication "increases the likelihood that substantive flaws in methodology will be detected").  Furthermore, Certus's characterization of Opie's testimony as lacking any methodology is incorrect.  One need not leverage a multi-variate regression or conduct laboratory tests to qualify as having used a methodology, let alone a reliable one.  *See, e.g.*, *Fahmy v. Jay Z*, 2015 WL 5680299, at *3 (C.D. Cal. Sept. 24, 2015) (finding that an expert's qualitative approach to

---

[9]     Opposition to Defendant's First Motion *in Limine* 8:16-9:18.

[10]    Defendant's First Motion *in Limine* 2:24.

[11]    *Id*. at 6:23.

[12]    Opposition to Defendant's First Motion *in Limine* 10:6.

[13]    *Id*. at 11:15-12:10 (describing how Opie reviewed and researched regulatory schemes for cannabis testing across various states and municipalities).

[14]    *Id*. at 6:16-18 & 11:9-11.

understanding the success of an album was sufficiently reliable to be considered by the jury).  Here, Opie interviewed more than 70 industry leaders and scientists.[15]  Canvassing those types (and that number) of sources is a reasonable approach to undergird Opie's testimony regarding what are essentially qualitative insights.  *See* Fed. R. Evid. 702(b) & (c).

Even so, says Certus, Opie could not have correctly applied that methodology to this case, since he "admitted that he has not worked with any cannabis analytical laboratories that have submitted data validation packages to the California BCC for licensing purposes."[16]  The Court is not convinced.  Opie's lack of firsthand experience does not necessarily undercut the application of his approach to the facts at hand.  Opie could still very well be correct in his opinion, even if he never did it himself.  This issue is better suited to exploration through cross-examination.

Lastly, Certus's fourth criticism may be disregarded since Opie's opinions appear to be more than mere conduits for hearsay; instead, they reflect a synthesis of interviews and other research.[17]  *See* Fed. R. Evid. 703; *see also United States v. Vera*, 770 F.3d 1232, 1239 (9th Cir. 2014) (permitting expert testimony based upon hearsay when it is more than "merely repackaged testimonial hearsay"); *United States v. Nelson*, 2021 WL 75757, at *17 (N.D. Cal. Jan. 8, 2021) (permitting testimonial hearsay through an expert opinion when it is a "synthesis of various source materials") (internal citations omitted).  Therefore, Opie's testimony may be admitted and Certus's First Motion *in Limine* is **DENIED**.

---

[15]     Decl. of Dr. Shaun R. Opie in Supp. of the Opposition to Defendant's First Motion *in Limine* [ECF No. 108-1] ¶ 1.

[16]     Defendant's First Motion *in Limine* 7:15-18.

[17]     *Id*. at 9:10-10:24.

1    2.      **Motion *in Limine* No. 2**

2         The thrust of Certus's second Motion *in Limine* is that some of

3    PerkinElmer's witnesses offered testimony during their depositions that

4    contradicted an answer that PerkinElmer previously gave in response to one of

5    Certus's interrogatories.[18]  Specifically, PerkinElmer stated that SC Labs, an

6    independent non-party laboratory, returned "substantial testing data confirming

7    the successful performance of PerkinElmer's analytical method for the

8    QSight 420 in the cannabis flower matrix."[19]  However, the depositions of

9    PerkinElmer Senior Product Manager, Senior Principal Application Scientist,

10   Field Applications Scientist, and Senior Business Development Leader

11   appear—at least, superficially—to undercut PerkinElmer's answer to the

12   interrogatory.[20]  Accordingly, Certus asks for evidentiary sanctions pursuant to

13   Rule 37(c)(1) of the Federal Rules of Civil Procedure.[21]

14        A party who has responded to an interrogatory "must supplement or

15   correct" its answer "if the party learns that in some material respect the

16   disclosure or response is incomplete or incorrect, and if the additional or

17   corrective information has not otherwise been made known to the other parties

18   during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A).

19   Otherwise, the information contained in the response may not be used at a trial,

---

[18]     Def. and Countercl.'s Mot. *in Limine* No. 2 for Rule 37(c)(1) Evidentiary
Sanctions Precluding Evid. and Establishing Facts Regarding Supposed Third-
Party Validation of Pl.'s QSight 420 Standard Operating Procedure
("Defendant's Second Motion *in Limine*") [ECF No. 93] 1:16-20.

[19]     Decl. of Sunil A. Brahmbhatt in Supp. of Defendant's Second Motion *in
Limine* [ECF No. 93-1], Ex. A (Pl.'s Responses to Def.'s First Set of Interrogs.)
[ECF No. 93-2] 6:19-22.

[20]     *See* Defendant's Second Motion *in Limine* 4:11-6:2 (highlighting
deposition transcripts suggesting that SC Labs did not independently validate
the SOP).

[21]     *Id*. at 1:24-26 & 7:3-9:8.

unless "the failure was substantially justified or is harmless."
Fed. R. Civ. P. 37(c)(1).

PerkinElmer contends that Rule 37(c)(1) sanctions are not warranted, since it never made an incorrect statement in its response to Certus's interrogatory.[22] Indeed, PerkinElmer points out that it never stated that SC Labs validated its SOP, precisely because "validation" is a term of art in this context.[23] The Court agrees. A close reading of PerkinElmer's answer to the interrogatory and the deposition testimony reveals a distinction that Certus's second Motion *in Limine* glosses over: SC Labs provided data that could be used for validation, but it did not perform the validation itself.[24] That distinction is consistent with PerkinElmer's initial allegation in its answer to Certus's counterclaims.[25] Accordingly, the Court sees no reason to impose evidentiary sanctions when it appears that the initial response was neither incomplete nor incorrect—at least from PerkinElmer's perspective.[26] *See* Fed. R. Civ. P. 26(e)(1)(A). Thus, Certus's second Motion *in Limine* is **DENIED**.

**B.     PerkinElmer's Motions *in Limine***

**1.     Motion *in Limine* No. 1**

PerkinElmer seeks to exclude (1) evidence of lost profits arising out of a contract that Certus signed with ICON Farms;[27] (2) evidence of damages arising

---

[22]     Pl.'s Opp'n to Defendant's Second Motion *in Limine* [ECF No. 109] 10:19-25.

[23]     *Id.* at 4:16-22.

[24]     *Compare id.* at 6:17-10:17 *with* Defendant's Second Motion *in Limine* 4:11-9:2.

[25]     *See* Counterdef.'s Answer to First Am. Countercl. [ECF No. 26] 3:22-4:3 (responding that the SOPs were tested against standards that ***would*** be used if validation was sought).

[26]     In concluding that PerkinElmer has not violated Rule 26(e)(1)(A), the Court does not intend to prejudge the evidence or to make any findings of fact.

[27]     While neither party bothers to inform the Court regarding who or what ICON Farms is, the Court infers that ICON Farms is a distributor of hemp

from a lowered valuation, as informed by a non-binding term sheet with Bedford Acquisition Partners Ltd.; and (3) the expert testimony of Bing Kho, Ph.D.[28] PerkinElmer describes the damages arising out of the ICON contract as speculative because Certus needed to have successfully obtained its licensure before earning any revenues from the contract—an accomplishment, PerkinElmer argues, that Certus was nowhere close to reaching.[29]  And because Kho based his estimates of Certus's lost profits and enterprise value upon the assumption that Certus would have been licensed, his testimony, too, should be excluded, according to PerkinElmer.[30]  Finally, PerkinElmer contends that the term sheet should be excluded because it was non-binding, and, therefore, it retains no probative value that could justify the risk of potentially "confus[ing] the jury."[31]  *See* Fed. R. Evid. 403.

The Court declines to exclude that evidence and testimony for at least two reasons.[32]  First, PerkinElmer is asking the Court to put the proverbial cart

_____

and/or cannabis products, based upon the evidence of record.  *See, e.g.*, Decl. of William A. White in Supp. of Pl. and Counterdef.'s Mots.' *in Limine* Nos. 1-5 (the "White Declaration") [ECF No. 95-1], Ex. 13 (the "ICON Farms Contract") [ECF No. 95-3].

[28]  Pl.'s Mot. *in Limine* No. 1 to Exclude Evid. of Damages That Are Speculative, Uncertain, and Contingent on Acts of Third Parties ("Plaintiff's First Motion *in Limine*") [ECF No. 95] 5:1-7.

[29]  *Id*. at 9:28-10:21.

[30]  *Id*. at 10:22-13:1.

[31]  *Id*. at 13:11-12.

[32]  Other reasons compelling the denial of the Motion may exist, but the Court will refrain from discussing those defects at length since they were not briefed.  In sum, other than a cursory reference to Rule 403, *see id*. at 13:13, PerkinElmer does not invoke any Federal Rule of Evidence for excluding Certus's evidence here.  Instead, PerkinElmer grounds its motion in California case law.  *See generally id*.  That approach leaves PerkinElmer in a bind.  To the extent that the California case law is *procedural* in nature (rather than substantive), PerkinElmer's Motion encounters an *Erie* problem, since federal courts sitting in diversity apply federal procedural law and PerkinElmer's authorities would become inapposite.  *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  But to the extent that the law is substantive, PerkinElmer's Motion faces a choice-of-law issue.  *See* Partial Summary Judgment Order [ECF No. 65] 8:1-9:3 (holding that Massachusetts law controls).  If for some reason California substantive law *still* applied, then PerkinElmer's Motion encounters yet another

1  before the horse.  While the evidence in question speaks to damages, its
2  relevance rests upon Certus's theory of causation—*i.e.*, that deficiencies in the
3  QSight 420 prevented Certus from obtaining licensure from the BCC and,
4  consequently, caused Certus to miss out on the ICON Farms Contract.
5  Causation is a question for the trier of fact to determine in the first instance.[33]  If
6  Certus succeeds on its theory of causation, then the notion that Certus could
7  have actualized revenues from the ICON Farms Contract is entirely possible.
8       Second, PerkinElmer cites precedent from California state courts for the
9  proposition that evidence of imaginary or overly speculative damages should be
10  excluded,[34] but PerkinElmer fundamentally misapplies those authorities to the
11  facts of this case.  Under California law:

12      Where the fact of damages is certain, the amount of damages need
13      not be calculated with absolute certainty.  The law requires only that
14      some reasonable basis of computation of damages be used, and the
15      damages may be computed even if the result reached is an
16      approximation.  This is especially true where . . . it is the wrongful
17      acts of the defendant that have caused the other party to not realize
18      a profit to which that party is entitled.

19  *GHK Assocs. v. Mayer Grp., Inc.*, 224 Cal. App. 3d 856, 873–74 (1990) (internal
20  citations omitted).  California courts tend to be more concerned about excluding
21  evidence of damages regarding lost profits from "unestablished businesses."

22

---

23  obstacle—it begins to read more like a motion for summary judgment than a
24  motion *in limine*, which is proscribed under federal law and this Court's prior
   orders.  *See, e.g.*, *Nat. Res. Def. Council v. Rodgers*, 2005 WL 1388671, at *1
25  (E.D. Cal. June 9, 2005) ("[m]otions in limine address evidentiary questions and
   are inappropriate devices for resolving substantive issues"); *see also* Civil Trial
   Scheduling Order [ECF No. 30] 4:10-11.

26  [33]     Def.'s Opp'n to Plaintiff's First Motion *in Limine* (the "Opposition to
27  Plaintiff's First Motion *in Limine*") [ECF No. 103] 2:1-22.

   [34]     *See, e.g.*, Plaintiff's First Motion *in Limine* 8:28-9:3 (citing *Lueter v. State
28  of California*, 94 Cal. App. 4th 1285, 1302 (2002)).

*See Sargon Enterprises, Inc. v. Univ. of S. California*, 55 Cal. 4th 747, 774 (2012). Where the operation of "an unestablished business is prevented or interrupted, damages for prospective profits that might otherwise have been made from its operation are not recoverable for the reason that their occurrence is uncertain, contingent and speculative." *Grupe v. Glick*, 26 Cal. 2d 680, 693 (1945). But even then, evidence of lost profits for an unestablished business may be admitted "where their nature and occurrence can be shown by evidence of reasonable reliability." *Id.*

Here, the ***amount*** of damages is relatively well-defined, even if causation is yet to be determined. After all, the ICON Farms Contract spells out specific terms and pricing information.[35] Furthermore, Certus was not an unestablished business, as it had been operational.[36] *See Orozco v. WPV San Jose, LLC*, 36 Cal. App. 5th 375, 399 (2019) (noting that a business is established when it has been in operation); *Alpha GRP, Inc. v. Subaru of Am., Inc.*, 2021 WL 1146029, at *9 (C.D. Cal. Feb. 8, 2021) (stating that an established business "need not be presently profitable"). And even if Certus was unestablished, the ICON Farm Contract provides a reliable basis for inferring lost profits—even if circumscribed only to those profits arising from revenues gained from the contract.[37]

Therefore, the ICON Farm Contract should not be excluded, and, as a result, neither should Kho's testimony. "Courts must not be too quick to exclude expert evidence as speculative merely because the expert cannot say

---

[35]     *See generally* ICON Farms Contract.

[36]     Opposition to Plaintiff's First Motion *in Limine* 1:23-26.

[37]     At the hearing, PerkinElmer narrowed its position, stating that the lost profits should be excluded not because Certus was unestablished, but rather because any profits from the ICON Farm Contract were uncertain as to their occurrence. In other words, whether Certus could avail itself of the contract was in doubt. But again, PerkinElmer misses the point: that conclusion can only be reached if the Court assumes that PerkinElmer's theory of causation is correct and Certus's theory is wrong. Causation is a question for the trier of fact.

with absolute certainty what the profits would have been." *Sargon Enterprises*, 55 Cal. 4th at 775.

Lastly, the fact that a term sheet is not binding is no reason to conclude that its contents are not meaningful.  A trier of fact should be given the opportunity to hear evidence of Certus's valuation in the market.  Cross-examination can reveal the degree to which the non-binding character of the term sheet means that its contents should be taken with a grain of salt.  The term sheet is admissible under Rule 403, and PerkinElmer's first Motion *in Limine* is **DENIED**.

### 2.   Motion *in Limine* No. 2

PerkinElmer's second Motion *in Limine* asks the Court to issue exclusion sanctions, pursuant to Rule 37(c)(1), forbidding Certus from presenting or introducing evidence in support of its "new case theory" at trial.[38]

As PerkinElmer tells it, Certus's original theory of the case could be characterized as defeat snatched from the jaws of victory.  Certus had a temporary license to test for cannabis, which was set to expire on September 11, 2019.[39]  The only hurdle that Certus needed to clear to renew its license with the BCC, Certus believed, was demonstrating its proficiency with testing cannabis samples for pesticides and mycotoxin contaminants using PerkinElmer's QSight 420.[40]  And because the QSight 420 failed to live up to its hyped capabilities, Certus could not submit its data validation.  That failure cascaded into a series of unfortunate events:  because Certus could not pass the validation

---

[38]   Pl.'s Mot. in *Limine* No. 2 to Preclude Presentation and Exclude Evidence in Supp. of New Case Theory at Trial ("Plaintiff's Second Motion in *Limine*") [ECF No. 96] 13:17-20.

[39]   First Am. Countercl. (the "FACC") [ECF No. 23] ¶ 16.

[40]   Plaintiff's Second Motion in *Limine* 4:12-19.

test, Certus could not renew its license, and so it had to stop operating its laboratory, and, thus, it ultimately fell into ruin.[41]

Now, at the close of discovery, new evidence has come to light that casts doubt on Certus's original theory, says PerkinElmer.[42]  An email from Certus's office administrator, Jackie Engle, suggests that Certus was nowhere close to the finish line.  It reads:

> Hello all,
>
> What we had originally interpreted as us almost being able to conduct compliance testing has, once again, turned into the BCC moving our compliance goal post.  The BCC is now requiring us to submit full validation reports for all our analyses (residual solvents included) in order to begin compliance testing. . . .  These validations are going to require time, manpower, and supplies separate from our typical day to day operations.  We are going to have to take what we thought we had a year to do and finish it in the span of a few months if not sooner.[43]

In other words, the QSight 420 and any alleged misrepresentations could not have been the but-for cause of Certus's demise.  Certus had to demonstrate proficiency for many other contaminants and analytes, such as "cannabinoids, microbial impurities, heavy metals, water activity, foreign material, moisture content, and residual solvents," but it had not accomplished those tasks.[44]

PerkinElmer latches onto the Engle E-mail as proof that "Certus knew or should have known the theory of its case was false and it should have withdrawn its counterclaims during the safe harbor period after PerkinElmer's Rule 11

---

[41]   FACC ¶ 50.
[42]   Plaintiff's Second Motion in *Limine* 7:16-24.
[43]   White Declaration, Ex. 37 (the "Engle E-mail") [ECF No. 95-3].
[44]   Plaintiff's Second Motion in *Limine* 5:6-8.

1   Motion was served."[45]  PerkinElmer argues that for Certus to advance a new

2   theory of its case, Certus needed to have amended its counterclaims, Rule 26

3   disclosures, and interrogatory responses.[46]  Since Certus did not, PerkinElmer

4   claims that exclusionary sanctions under Rule 37(c)(1) are warranted.[47]

5          PerkinElmer's frustration is palpable.  Nonetheless, the Court declines to

6   grant issue exclusion sanctions for three reasons.  First, much of the evidence in

7   the record could speak to both theories.  Untangling it all, therefore, would

8   require expending enormous judicial resources.  Meanwhile, the alternative of

9   relying on simple heuristics to draw lines risks excluding more evidence than

10  would otherwise be merited.  Neither course of action is particularly appetizing

11  to the Court.

12         For instance, in its initial briefing, PerkinElmer offered no guidance to the

13  Court on how or where to draw any lines with respect to its request.  Deciding

14  what evidence to exclude under the "new" theory (but not the "old" theory)

15  would be rife with ambiguity, even where one theory was clearly distinguishable

16  from another.  Moreover, it is not altogether clear that Certus ***does*** have a new

17  theory.[48]  Asking the Court to impose such broad evidentiary sanctions with so

18  little guidance is a bridge too far.  *Accord Bravo v. City of Santa Maria*, 2013 WL

19  12224037, at *9 (C.D. Cal. July 1, 2013) (denying a motion in *limine* where the

20  requested relief was "too broad and vague for the court to issue such an order

21  prior to trial").

22

23

_____

24  [45]     *Id*. at 10:5-7.  PerkinElmer also points to the Rule 30(b)(6) depositions
    taken in March 2022, corroborating the allegations in the Engle E-mail.  *See id*.
25  at 8:7-9:5 (citing to the depositions of Mike Tunis and Matt Haskin).

26  [46]     *Id*. at 10:13-11:5.

    [47]     *Id*. at 11:6-13:15.

27  [48]     *Compare id*. at 9:11-10:3 *with* Def.'s Opp'n to Plaintiff's Second Motion in
    *Limine* (the "Opposition to Plaintiff's Second Motion in *Limine*") [ECF
28  No. 104] 1:24-2:11.

1    In response to this Court's tentative order discussing the issue above,

2 PerkinElmer made a valiant effort at the hearing to draw a line (or perhaps a

3 plane) along two dimensions:  (1) temporally, by excluding any evidence after

4 September 11, 2019 (the date that Certus lost its provisional license); and

5 (2) substantively, by excluding evidence regarding Certus's efforts regarding

6 non-analytes.

7    But those lines, while instructive, are no panacea.  Excluding evidence

8 discovered after September 11, 2019, could just as well exclude evidence relating

9 to both the "new" and the "old" theory,[49] thus prejudicing Certus's ability to

10 muster a defense under either theory.  Merely because PerkinElmer itself

11 *believed* that evidence concerning events occurring after September 11, 2019,

12 was irrelevant for discovery purposes does not make it so.  Similarly, evidence

13 concerning Certus's plans, beliefs, or capabilities regarding the other data

14 validation packages could itself overlap with evidence regarding the data

15 packages that the QSight 420 was meant to address.  The Court fears that

16 PerkinElmer could therefore wield its requested evidentiary sanctions as a

17 sword, rather than a shield.  Moreover, excluding evidence regarding the other

18 data validation packages is only sensible if Certus had wedded itself to the

19 narrowly defined theory of the case that PerkinElmer describes.  But nothing in

20 the Certus's counterclaims or its answers to PerkinElmer's interrogatories

21 jumps out to the Court as evincing that Certus has done so.  Certus's pleading is

22 as consistent with the "new" theory as it is with the supposed "old" theory.[50]

---

[49]    *See, e.g.*, Omnibus Decl. of Sunil A. Brahmbhatt in Supp. of the
Opposition to Plaintiff's Third Motion in *Limine* (the "Omnibus Declaration")
[ECF No. 102], Ex. I. (Expert Witness Op. Report in Rebuttal) [ECF No. 102-1]
4.a.iii.  This line would also exclude evidence that could lean in favor of
PerkinElmer's position.  *See, e.g.*, White Declaration, Ex. 2 (Videotaped Dep. of
Certus Analytics' Person Most Knowledgeable Mike Tunis) [ECF No. 95-2]
57:4-59:2 (discussing whether a software patch resolved an alleged issue with the
QSight 420).

[50]    *See generally* FACC.  Even if Certus has pivoted or shifted its position, it
has done so within the confines of its counterclaims.  Certus's effort to make use

Second, other remedies are superior to evidentiary sanctions. To the extent that PerkinElmer believes that it has found a damning admission, PerkinElmer should expose that evidence to the trier of fact. To the extent that PerkinElmer believes that Certus's counsel abrogated his duties under Rule 11(b), the Court will evaluate that motion independently. Should malfeasance be found, the Court will mete out appropriate sanctions. And to the extent that PerkinElmer believes that it will be prejudiced at trial without having taken discovery on events occurring after September 11, 2019, then PerkinElmer may make an appropriate application to reopen discovery for a limited—and very carefully circumscribed—purpose.

Third, with regard to the interrogatories that PerkinElmer impugns,[51] the Court is not persuaded that Certus's responses were clearly incongruent with the theory of the case that Certus espouses. The statements are only inaccurate if the trier of fact credits PerkinElmer's arguments regarding causation (and intervening causes) while disregarding those of Certus.

Given the "particularly wide latitude" afforded to district courts under Rule 37(c)(1), *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001), the aforementioned reasons offer the Court compelling grounds to refrain from issuing sanctions. PerkinElmer's second Motion in *Limine* is **DENIED**.

### 3. Motion *in Limine* No. 3

PerkinElmer's third Motion in *Limine* seeks to exclude the deposition and opinion of Certus's non-retained expert, Mike Tunis.[52] PerkinElmer believes that Tunis should have been designated as a retained expert, which would

---

of the play in the joints of its pleading does not strike the Court as unduly prejudicial to PerkinElmer.

[51]     Opposition to Plaintiff's Second Motion in *Limine* 6:9-17.

[52]     Pl.'s Mot. in *Limine* No. 3 to Exclude Expert Testimony of Mike Tunis ("Plaintiff's Third Motion in *Limine*") [ECF No. 97] 14:18-22.

1  require him to provide a written report.[53]  *See* Fed. R. Civ. P. 26(a)(2)(B); *see also*

2  *Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011)

3  (holding that a treating physician's testimony is exempt from Rule 26(a)(2)(B)'s

4  written report requirement only to the extent that his or her opinions were

5  formed during the course of treatment).  But since Tunis did not provide such a

6  report, it follows, Certus should not be permitted to use Tunis's non-percipient

7  testimony at trial.[54]  *See* Fed. R. Civ. P. 37(c)(1).

8       Generally, percipient witnesses who are neither retained for the litigation

9  nor specially hired to provide expert testimony are exempt from the written

10  report requirement.  *See Goodman*, 644 F.3d at 819.  In other words, where an

11  expert's testimony "arises not from his enlistment as an expert but, rather, from

12  his ground-level involvement in the events giving rise to the litigation," that

13  witness "falls outside the compass of Rule 26(a)(2)(B)."  *Downey v. Bob's Disc.*

14  *Furniture Holdings, Inc.*, 633 F.3d 1, 6 (1st Cir. 2011); *accord Fielden v. CSX*

15  *Transp., Inc.*, 482 F.3d 866, 869 (6th Cir. 2007), *as amended on denial of reh'g and*

16  *reh'g en banc* (July 2, 2007).

17       PerkinElmer believes that Tunis should be considered a retained expert

18  because some of his opinions were informed by his experiences working at

19  testing laboratories other than Certus.[55]  The Court disagrees.  Even if

20  PerkinElmer is correct that parts of Tunis's testimony are based upon facts that

21  he learned after his employment with Certus ended (which appear *de minimis*

22  and largely cherry-picked), Tunis testified that he was not compensated for his

23

---

24  [53]      *Id*. at 9:20-12:20.

25  [54]      *Id*. at 11:23-24.

26  [55]      Specifically, Tunis testified that he later learned that the QSight 420's SOPs were flawed with respect to analytes for the pesticide chlordane.  But

27  Tunis testified that he was made aware of that deficiency only after he stopped working for Certus.  *See id*. at 8:5-9:7; *see also* Def.'s Opp'n to Plaintiff's Third Motion in *Limine* (the "Opposition to Plaintiff's Third Motion in *Limine*")

28  [ECF No. 105] 8:13-18.

1    opinion.[56]  PerkinElmer offers no reason or evidence to contradict that

2    declaration.[57]  So, unlike *Goodman*, where the plaintiff actually ***retained***

3    testifying doctors who were not percipient witnesses, *see Goodman*, 644 F.3d at

4    826, it could not be said that Certus retained Tunis as contemplated by

5    Rule 26(a)(2).  *See Cantu v. United States*, 2015 WL 12743881, at *6 (C.D. Cal.

6    Apr. 6, 2015) (treating a witness as non-retained where the witness was neither

7    "compensated for his testimony," nor "'retained' in any sense of the word").

8    Thus, Tunis is exempt from Rule 26(a)(2)(B)'s written report requirement.

9        However, Tunis is not exempt from the catch-all expert disclosure

10   requirement.  *See* Fed. R. Civ. P. 26(a)(2)(C).  That rule requires Certus to

11   disclose "the subject matter on which the witness is expected to present

12   evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary of

13   the facts and opinions to which the witness is expected to testify."  *Id*.  Certus

14   satisfied the first prong of Rule 26(a)(2)(C) with its disclosure, which states:

15       2. Mike Tunis, a percipient witness, will provide expert opinion

16       testimony pursuant to FRE 702 in this matter on the following

17       subjects; (a) PerkinElmer Methods and SOPs for the Qsight 420 and

18       their failure to validate the instrument in compliance with California

19       Bureau of Cannabis Control regulations. (b) Opinions based on his

20       personal working experience of PerkinElmer's SOP's and Methods

21       for the Qsight and the failure of the Method and SOPs of

22       PerkinElmer to validate the Qsight 420 in compliance with the

23       California Bureau of Cannabis Control regulations.[58]

24

25   [56]    Omnibus Declaration, Ex. B (Videotaped Dep. of Certus Analytics'

26   Person Most Knowledgeable Mike Tunis) (the "Tunis Deposition") [ECF
     No. 102-1] 305:18-24.

27   [57]    *See generally* Plaintiff's Third Motion in *Limine*.

     [58]    White Declaration, Ex. 155 (Disclosure of Expert Witness) [ECF
28   No. 95-3] 2:14-22.

1  *See* Fed. R. Civ. P. 26(a)(2)(C)(i).  But that disclosure did not provide any

2  indication of the details to which Tunis was (or is) expected to testify.  *See*

3  Fed. R. Civ. P. 26(a)(2)(C)(ii).  As other district courts have noted, simply

4  disclosing the topics is insufficient.  Certus would need both a summary of

5  Tunis's opinions—*i.e.*, an abstract, abridgement, or compendium—as well as

6  facts supporting those opinions.  *See, e.g.*, *Epitech, Inc. v. Krause*, 2016 WL

7  7637660, at *3 (C.D. Cal. Sept. 21, 2016); *Hansen v. Albertsons Companies, LLC*,

8  2020 WL 8261754, at *3 (D. Nev. Dec. 29, 2020); *Gorrell v. Sneath*, 2013 WL

9  4517902, at *3 (E.D. Cal. Aug. 26, 2013); *Flonnes v. Prop. & Cas. Ins. Co. of*

10  *Hartford*, 2013 WL 2285224, at *3 (D. Nev. May 22, 2013).  Thus, Certus did

11  not satisfy the disclosure requirement pursuant to Rule 26(a)(2)(C)(ii).

12      When a party fails to make the disclosures required by Rule 26(a), that

13  party is not allowed to use the witness to supply evidence at trial unless it

14  establishes that the failure was substantially justified or harmless.  *See*

15  Fed. R. Civ. P. 37(c)(1).  In determining whether to exercise that exception,

16  "courts consider (1) the surprise to the party against whom the evidence would

17  be offered; (2) the ability of that party to cure the surprise; (3) the extent to

18  which allowing the evidence would disrupt the trial; (4) the importance of the

19  evidence, and (5) the nondisclosing party's explanation for [its] failure to

20  disclose the evidence."  *Dey, L.P. v. Ivax Pharms., Inc.*, 233 F.R.D. 567, 571

21  (C.D. Cal. 2005).

22      After hearing oral argument on this issue,[59] the Court is persuaded that

23  Certus's failure to include the summary was harmless.

24  • First, the surprise would have been minimal.  Having reviewed the various

25    excerpts of Tunis's deposition,[60] the Court concludes that the subject

26  ────────────────

27  [59]    Initially, neither side briefed the issue.  *See generally* Plaintiff's Third
Motion in *Limine* & Opposition to Plaintiff's Third Motion in *Limine*.

28  [60]    *See, e.g.*, White Declaration, Ex. 2 (Videotaped Dep. of Certus Analytics'
Person Most Knowledgeable Mike Tunis) [ECF No. 95-2]; *id.*, Ex. 3

matter of Tunis's testimony stayed in the realm of Certus's theory of the case.  It did not veer into unknown territory; no new grand plot twists emerged.

- Second, had the summary been properly included, PerkinElmer would have largely been in the same position it is now.  It would have had the same tools to remedy the situation as it does now after taking Tunis's deposition; *e.g.*, PerkinElmer could have applied to the Court for further discovery (concerning Think20) or could have stipulated or applied to the Court to continue certain case calendar dates.

- Third, introducing Tunis's deposition would not disrupt the trial.  If anything, the encumbrances from excluding Tunis's deposition in full (or proceeding with some hybrid scheme, where Tunis could only testify to percipient events related to Certus but not to Think20) may prove even more disruptive to the trial.

- Fourth, both sides agree that the evidence is important,[61] which weighs against exclusion.  *See Dey*, 233 F.R.D. 572 (finding against preclusion where the evidence was deemed important).

Only the fifth factor weighs against inclusion of the evidence, since Certus's explanation for the deficient summary was essentially non-existent.  At the hearing, Certus made the remarkable claim that (it believed) its disclosure—which lacked any summary of facts and opinions whatsoever—somehow satisfied the clear dictates of Rule 26(a)(2)(C)(ii) because it provided notice under Rule 26(a)(2)(C)(i).  That response is nonsense.  The rules would not spell out two separate requirements if the former encompassed the latter.

---

(Videotaped Videoconference Dep. of Mike Tunis) [ECF No. 95-2]; Tunis Deposition.

[61]    *See also* Opposition to Plaintiff's Third Motion in *Limine* 10:11-20 (explaining that excluding Tunis's testimony would be prejudicial to its interests).

Notwithstanding that complete misreading of the rule, Certus's violation is little more than a technicality for the reasons discussed above.

On balance, then, the omission of a summary lacked the requisite harm to warrant the exclusion of Tunis's testimony.  Thus, the Court **DENIES** PerkinElmer's Third Motion *in Limine*.

### 4.   Motion *in Limine* No. 4

PerkinElmer's Fourth Motion *in Limine* asks the Court to limit the testimony of Certus's expert, Dr. Jerry White, in the following respects:

> (1) Dr. White may not provide expert testimony other than in rebuttal to Dr. Opie's initial February 4, 2022, initial expert report;
> (2) Dr. White may not provide any expert testimony in opposition to the first opinion in Dr. Opie's February 4, 2022, initial expert report; (3) Dr. White may not provide any expert testimony outside of his two narrow opinions that the BCC does not always have a lengthy review time and Certus could have possibly prepared, submitted and obtained BCC approval of a data validation report for the testing of pesticides and mycotoxins within two weeks; and,
> (4) Dr. White may not provide expert testimony that Certus could have possibly prepared, submitted and obtained BCC approval of a data validation report for the testing of pesticides and mycotoxins within two weeks.[62]

PerkinElmer justifies its elaborate request by characterizing White's testimony as "solely offering two narrow rebuttal opinions" that were "solely intended to rebut those contained in the February 4, 2022, initial report of PerkinElmer's expert, Dr. Shaun Opie."[63]

---

[62]   Pl.'s Mot. in *Limine* No. 4 to Exclude Testimony from Jerry White, Ph.D. ("Plaintiff's Fourth Motion in *Limine*") [ECF No. 98] 12:15-13:6.

[63]   *Id*. at 5:4-7.

In response, Certus argues that PerkinElmer makes a strawman out of White's testimony.[64]  The Court agrees.  As a result, the Court is disinclined to constrain White's testimony artificially, ahead of trial.  Confining his testimony to certain opinions, absent some controlling authority, presents risks of over-engineering, thus doing more harm than good.

PerkinElmer also makes a threadbare argument that White's testimony should be excluded under *Daubert* and Rule 702, but the Court is not persuaded in view of White's experience with California cannabis testing laboratories.[65] PerkinElmer's Fourth Motion in *Limine* is **DENIED**.

### 5.      Motion *in Limine* No. 5

Lastly, PerkinElmer's Fifth Motion in *Limine* asks the Court to preclude Certus from "offering or referencing any evidence relating to the indictments and/or convictions of Dr. Opie's former business associates for Medicare fraud."[66]  Apparently, two of Opie's former business associates—Nick Arroyo and Phillip Lamb—were investigated and indicted for Medicare fraud.[67]  Arroyo pleaded guilty.[68]  Because Opie was neither involved nor implicated in those investigations, PerkinElmer argues that reference to them would be both highly prejudicial and wholly irrelevant.[69]  *See* Fed. R. Evid. 403.  In response, Certus asks the Court not to close the door too hastily, as there may be relevant lines of cross-examination that impeach Opie's qualifications as a leader and former

---

[64]      *See, e.g.*, Def.'s Opp'n to Plaintiff's Fourth Motion in *Limine* [ECF No. 106] 3:8-11, 4:6-19, 5:1-6, & 6:7-12.

[65]      *Id.* at 1:3-8 (describing White's qualifications and the some of the bases for his opinions).

[66]      Pl.'s Mot. in *Limine* No. 5 to Exclude Evidence of Indictments and Convictions of Former Business Associates ("Plaintiff's Fifth Motion in *Limine*") [ECF No. 99] 6:10-12.

[67]      *Id.* at 4:9-14.

[68]      *Id.* at 4:14.

[69]      *Id.* at 4:16-18, 5:13-18, & 5:23-6:7.

-23-

1  chief science officer at now-defunct Vantari Genetics, a company that Opie co-
2  founded.[70]

3      The Court is skeptical that Opie's business associates would be relevant
4  to this case, or even to Opie's qualifications.  It further agrees that allowing
5  Certus to introduce evidence *carte blanche* about Opie's past business associates
6  risks confusing and misleading the jury.  *See* Fed. R. Evid. 403.  But, the Court is
7  not clairvoyant.  There may yet be instances where that evidence could be
8  relevant and could meritoriously impeach Opie's testimony.  The Court would
9  wish to determine the admissibility of that evidence in context and on the merits.
10 Accordingly, the Court **GRANTS** the Fifth Motion in *Limine* in part and
11 **DENIES** it in part:  Certus may not introduce evidence of Opie's business
12 associates unless done so in cross-examination with the prior permission of the
13 Court (sought and obtained, of course, outside of the hearing of the jury).

### III.  CONCLUSION

15     For the foregoing reasons, the Court hereby **ORDERS** as follows:

16     1.     Certus's Motions in *Limine* are **DENIED**.

17     2.     PerkinElmer's First, Second, Third, and Fourth Motions in *Limine*
18 are **DENIED**.

19     3.     PerkinElmer's Fifth Motion in *Limine* is **GRANTED in part** and
20 **DENIED in part**.  Certus is precluded from introducing evidence of Shaun R.
21 Opie's business associates Nick Arroyo and Phillip Lamb, unless (a) referenced
22 in cross-examination for the limited purpose of impeaching Opie's testimony;

---

[70]    Def.'s Opp'n to Plaintiff's Fifth Motion in *Limine* [ECF No. 107] 2:4-16.

1    and (b) deemed admissible by the Court, subject to the Federal Rules of

2    Evidence, after all objections have been heard.

3         **IT IS SO ORDERED.**

4

5    Dated: June 22, 2022

6                                                John W. Holcomb
                                                 UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28